[No. C012164. Third Dist. Sept. 17, 1992.]

DIANA NEWMAN, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant;
CALIFORNIA HIGHWAY PATROL, Real Party in Interest and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Richard Thomson and Marybelle D. Archibald, Deputy Attorneys General, for Real Party in Interest and Appellant.

Darrell S. Steinberg for Plaintiff and Respondent.

No appearance for Defendant.

**OPINION**

**PUGLIA, P. J.**—Real party in interest, California Highway Patrol (CHP), appeals from the judgment in an administrative mandamus proceeding setting aside a decision of the State Personnel Board (Board) which upheld

plaintiff's medical termination. The trial court concluded the Board's decision was not supported by substantial evidence and remanded to the Board for further proceedings. We shall modify that portion of the judgment remanding to the Board and otherwise affirm.

I

Plaintiff began working for CHP on a permanent basis in February 1986. In 1988, she was classified an Office Assistant II. In March 1988, plaintiff began experiencing emotional problems and ceased working in May. From May until October 1988, plaintiff was on industrial disability leave.

Plaintiff began receiving psychiatric care from Dr. George Gross in June 1988. In his first report, dated July 27, 1988, Dr. Gross indicated plaintiff's relationship with her superiors and stress of her job were such that she could not return to work. However, on September 28, 1988, Dr. Gross provided a release for plaintiff to return to "limited work duty (4 hrs/day)" beginning October 5.

Plaintiff returned to work at CHP on a part-time basis but left shortly thereafter to work for the California Department of Transportation (Caltrans). After working as a probationary employee for Caltrans for three and one-half weeks, plaintiff was let go. She then exercised her right of reinstatement to CHP.

Plaintiff never actually returned to work at CHP. In a December 1, 1988, report, Dr. Gross indicated he did not believe plaintiff was in any better condition to return to work than when she first left CHP in May. From November 1988 to April 1989, plaintiff was again on industrial disability leave.

In February 1989, plaintiff was administered an MMPI, a psychological test designed to evaluate personality and identify emotional problems. Plaintiff's MMPI suggested a "dysthymic disorder" with symptoms of "depression, insomnia, some difficulties in eating, difficulties in concentration, difficulties in controlling her emotions." Dr. Gross diagnosed plaintiff's condition as more of a "bipolar disorder," defined as "difficulty in controlling emotions, difficulty in having emotional strains, real marked ups and downs, hyperactive at one point, quite lethargic and depressed at other times." Like dysthymic disorder, bipolar disorder is also manifested in difficulty concentrating, sleeping and eating.

The State Compensation Insurance Fund (SCIF) provided Dr. Gross copies of "job duty statements" for various jobs at CHP and requested he

determine whether plaintiff could perform those jobs in her current condition. In an April 4, 1989, letter, Dr. Gross responded: "I do not believe that she can be expected to participate in any of the job classifications that you so kindly provided for my perusal. This is based upon the difficulty she has had with supervisors, accepting the normal limits and stresses of a job experience, and her inability to get herself to work. These deficits are definitely related to a fairly well defined illness, namely dysthymic disorder with anxiety and mood swings. She also has symptoms of moderate to severe anxiety, depression and at times, confusion and difficulty in concentrating."

Also in his April 4 letter, Dr. Gross indicated he was discontinuing psychiatric care of plaintiff because of her inability or unwillingness to comply with treatment. He explained: "Her difficulties in following directions, perceiving her limitations and inability to appreciate some of the rules of human behavior spreads [*sic*] over to her relationship with me. It was necessary for me to sever my professional relationship with her because of her inability to keep appointments and difficulties in maintaining a medication schedule with her."

In April 1989, plaintiff began receiving psychiatric treatment from Dr. N. Nawaz Kaleel. On May 31, Dr. Kaleel sent a letter to SCIF indicating plaintiff "may return to limited work at her present classification for four hours per day beginning June 19, 1989." This recommendation was based on Dr. Kaleel's perception that plaintiff "was now much more in control of her moods. She was calmer and more relaxed and able to handle these stresses and apparently she was learning new ways of coping with stress and with problems at the workplace she had in the past." At the time of this recommendation, Dr. Kaleel had not reviewed job classification statements for plaintiff's position or anything else outlining her usual duties. A copy of Dr. Kaleel's letter was forwarded to CHP on June 8.

On June 2, CHP sent plaintiff a notice of medical termination effective June 23. However, this letter was sent to an old address and did not reach plaintiff. In mid-June, plaintiff called CHP and requested to return to work on a part-time basis. Plaintiff was then informed of her termination. In early August, after CHP determined plaintiff had submitted a change of address and therefore the notice of termination was defective, plaintiff was sent a new notice of termination, effective August 31, 1989.

Plaintiff appealed her termination. She also filed a request for reinstatement, which was consolidated with her appeal. At the hearing, testimony was received from several witnesses, including Dr. Gross and Dr. Kaleel, and medical reports were submitted. Dr. Gross confirmed his opinions as set

forth in his reports. Dr. Kaleel described his examinations of plaintiff and test results. Dr. Kaleel indicated plaintiff is better able to handle the stresses associated with her job than when she was examined by Dr. Gross.

At the conclusion of the hearing, the administrative law judge (ALJ) requested that Dr. Kaleel perform "a further evaluation of [plaintiff's] ability to return to work not only in connection with his having treated [her] . . . but also in—in accordance with that, I want him to review the job specification, review the job duties . . . ." The ALJ indicated this request was related strictly to plaintiff's request for reinstatement.

On December 18, 1989, Dr. Kaleel provided a further opinion as requested in which he indicated he reviewed the "duty statement" for plaintiff's job and concluded: "Mrs. Newman can return to part-time work at this time on a four hours a day, five days a week basis."

The ALJ concluded plaintiff's termination was justified based on the reports and opinions of Dr. Gross. The ALJ concluded Dr. Kaleel's opinion as of July 1989 was "insufficient for the purpose of setting aside the medical termination" because, at the time, Dr. Kaleel had not reviewed plaintiff's job specifications and had not provided a sufficient analysis of his opinion. The ALJ also concluded Dr. Kaleel's opinion was insufficient to support reinstatement because CHP indicated there was no part-time position available and no contrary evidence was presented. The Board adopted the opinion of the ALJ as its decision.

On plaintiff's petition for writ of mandate, the trial court concluded no substantial evidence existed to support plaintiff's termination. According to the court, neither medical opinion was substantial evidence of plaintiff's condition at the time of termination. Therefore the court remanded for the Board "to conduct further proceedings to determine whether or not [plaintiff] was medically incapacitated or not and suitable for any position at the CHP in August of 1989." The court also remanded for determination of reinstatement and backpay issues.

II

■ "Where a decision of the State Personnel Board is reviewed on petition for writ of administrative mandate this court and the trial court apply the same standard of review: the substantial evidence rule. [Citations.] Pursuant to that rule the factual determinations of the board must be upheld if they are supported by substantial evidence and all reasonable and legitimate inferences must be drawn in support of those findings." (*Pan* v. *State Personnel Bd.* (1986) 180 Cal.App.3d 351, 357 [225 Cal.Rptr. 682].)

■ "Substantial evidence" requires evidence of "ponderable legal signif-
icance." (*People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193,
443 P.2d 777].) It is not synonymous with "any" evidence. The evidence
considered must be reasonable, credible, and of solid value and must be
"substantial" proof of the essential elements of the case. (*Ibid.*; *Lucas* v.
*Southern Pacific Co.* (1971) 19 Cal.App.3d 124, 136 [96 Cal.Rptr. 356].) In
assessing whether substantial evidence exists, we consider all evidence
presented, including that which fairly detracts from the evidence supporting
the Board's determination. (*County of San Diego* v. *Assessment Appeals Bd.
No. 2* (1983) 148 Cal.App.3d 548, 554 [195 Cal.Rptr. 895].)

Government Code section 19253.5 governs demotion, transfer or termina-
tion of state civil service employees for medical incapacity. It provides in
relevant part:

"(a) In accordance with board rule, the appointing power may require an
employee to submit to a medical examination by a physician or physicians
designated by the appointing power to evaluate the capacity of the employee
to perform the work of his or her position.

". . . . . . . . . . . . . . . . . . . . . . . . .

"(d) When the appointing power after considering the conclusions of the
medical examination provided for by this section or medical reports from the
employee's physician, and other pertinent information, concludes that the
employee is unable to perform the work of his or her present position, or any
other position in the agency, . . . the appointing power may terminate the
appointment of the employee.

"(e) The appointing power may demote, transfer, or terminate an em-
ployee under this section without requiring the employee to submit to a
medical examination, when the appointing power relies upon a written
statement submitted to the appointing power by the employee as to the
employee's condition or upon medical reports submitted to the appointing
power by the employee."

It is undisputed the reports and opinions of Dr. Gross provided substantial
evidence of plaintiff's inability to perform the duties of any suitable position
at CHP as of April 1989. Dr. Gross had been examining and treating plaintiff
for nearly a year and repeatedly indicated plaintiff could not do the work.
This opinion was supported by tests and in-depth analyses of plaintiff's
condition. During most of the period when plaintiff was being treated by Dr.
Gross, she was on industrial disability leave from CHP. In his final report,

Dr. Gross indicated he reviewed job classifications for various positions at CHP and concluded plaintiff could not do any of the jobs.

■ The critical question here, however, is whether Dr. Gross's reports and opinions provided substantial evidence of plaintiff's incapacity *at the time of termination.* The original notice of termination was sent to plaintiff on June 2, less than two months after Dr. Gross's last report. By this date, CHP had received no other reports regarding plaintiff's medical condition and therefore could reasonably assume her condition had not changed. It was not until after June 8, when SCIF forwarded to CHP a copy of Dr. Kaleel's May 31 letter, that CHP learned plaintiff was continuing to receive treatment and might be able to do the work.[1]

Had CHP's June 2 notice been effective, i.e., had it been sent to the proper address, we would be disposed to conclude the termination was supported by substantial evidence. It matters not that the effective date of the termination was after receipt of the Kaleel letter. The decision had already been made and put into effect based on the information available at the time. Later acquired information would go to the question of reinstatement only.

But the notice of termination was not sent to the proper address. On May 3, 1989, plaintiff sent CHP notice of an address change. For some unexplained reason, this notice had not been forwarded to CHP's personnel department and was not reflected on CHP's official roster. After this fact was discovered, in late July, CHP sent plaintiff a new notice of termination.

Government Code section 19253.5, subdivision (f) provides: "The employee shall be given written notice of any demotion, transfer, or termination under this section at least 15 days prior to the effective date thereof. . . ." Because the June 2 notice was defective, CHP was required to provide a new notice. At the time of this second notification, CHP had an opportunity to reassess its earlier, ineffective termination decision. By this time, CHP had the benefit of Dr. Kaleel's May 31 letter. Although this letter did not of itself establish plaintiff's ability to perform the work at CHP, it at least put CHP on notice Dr. Gross's opinions may no longer be valid.

As previously indicated, we review all the evidence in the record, not just that supporting the Board's findings. Here, the reports of Dr. Gross alone would suffice to support plaintiff's medical termination if viewed in isolation. However, those reports must be viewed in light of Dr. Kaleel's May 31

---

[1]Although the CHP representative who made the recommendation to terminate plaintiff testified he had not seen Dr. Kaleel's May 31 letter prior to the hearing in this matter, it is nevertheless undisputed the letter was forwarded to CHP. We assume receipt of the letter, just as all prior medical reports were received, and charge CHP with notice of its contents.

letter. This letter effectively deprived Dr. Gross's reports of current validity thus confuting the existing evidence supporting plaintiff's termination.

### III

■ Although we agree with the trial court that plaintiff's medical termination was not supported by substantial evidence, we disagree this matter should be remanded to the Board for further consideration. Code of Civil Procedure section 1094.5, which governs administrative mandamus proceedings, provides in subdivision (f): "The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

Where there are errors in the admission of evidence before an administrative agency, it is proper to remand to the agency for reconsideration. (See *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 268 [246 P.2d 656]; *Carlton* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428, 1434-1435 [250 Cal.Rptr. 809].) After a reviewing court determines what evidence is admissible, the agency should be given an opportunity to exercise its discretion based on that evidence alone. Remand for reconsideration is also appropriate where the original hearing before the agency was conducted by an unauthorized hearing officer. (See *National Auto. & Cas. Ins. Co.* v. *Downey* (1950) 98 Cal.App.2d 586, 594 [220 P.2d 962].) Again, the agency should be given an opportunity properly to assess the issues presented.

But where, as here, the administrative agency errs not in the conduct of the hearing but in the results reached, there is no basis for reconsideration. In the proceedings before the Board, CHP had the burden of proving plaintiff's inability to perform the work of her position or any other available position. (*Overton* v. *State Personnel Bd.* (1975) 46 Cal.App.3d 721, 725 [120 Cal.Rptr. 226].) CHP failed in its burden. CHP presented all medical reports available at the time of its decision but these reports did not amount to substantial evidence. CHP is not now entitled to a second opportunity to establish its case.

Pursuant to Government Code section 19253.5, subdivision (d), an administrative agency may terminate an employee whenever "after considering the conclusions of the medical examination provided for by this section or

medical reports from the employee's physician, and other pertinent information," the agency concludes the employee is incapable of doing the work. The relevant inquiry is whether the medical reports and other pertinent information available at the time establish such incapacity. That inquiry has been conducted and remand for further determination of plaintiff's condition at the time of termination is therefore unnecessary.

## IV

Having concluded plaintiff's medical termination was not supported by substantial evidence, it is unnecessary to consider whether reinstatement was appropriate. Regarding backpay, we note the Board made no findings on this issue, either for the period before the effective date of termination or for the period thereafter. The matter must therefore be remanded to the Board for the limited purpose of determining appropriate backpay. (Gov. Code, § 19253.5, subd. (g).)

The judgment is modified to provide for remand to the Board only for the purpose of determining backpay. In all other respects the judgment is affirmed. Plaintiff is to recover her costs.

Raye, J., concurred. Davis, J., concurred in the result.